[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The instant action arises out of the termination of the plaintiff's employment by the defendant, American Radio Delay League, Inc. In a seven-count revised complaint, the plaintiff, Chris Settembri, alleges 1) breach of implied or express contract; 2) breach of the implied covenant of good faith and fair dealing; 3) promissory estoppel; 4) intentional infliction of emotional distress; 5) "unintentional" infliction of emotional distress; 6) a "willful and wanton" violation of CT Page 2852 the plaintiff-employee's rights; and 7) violation of General Statutes 31-290(a).
According to the revised complaint, the plaintiff was employed by the defendant as a department supervisor, performing his duties in a manner satisfactory to his employer, when he injured his back while lifting a computer for the defendant-employer. The plaintiff, who spent several months away from the job as a result of this injury, filed a workers' compensation claim and received benefits during the time within which he was unable to work, or face termination. On February 4, 1991, the plaintiff had not yet reported to work, and the defendant fired him. Shortly thereafter on April 8, 1991, the plaintiff commenced this action.
The defendant has moved to strike each of the seven counts of the revised complaint and the prayer for relief, and provides support for its motion with a memorandum of law. The plaintiff has objected to the motion; however the objection and the supporting memorandum were not filed until December 16, 1991, the day the motion was heard at short calendar.
The purpose of a motion to strike is to challenge the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton, 212 Conn. 138, 561 A.2d 432 (1989). In ruling on a motion to strike, the court must take the facts to be those alleged in the revised complaint. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348-49, 576 A.2d 149 (1990); D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 208, 520 A.2d 217 (1987). A motion to strike, being an attack on the pleadings, admits all well-pled facts, including those necessarily implied from them, but does not admit legal conclusions. Mingachos v. CBS, Inc., 196 Conn. 91,491 A.2d 368 (1985). "Conclusions of law, absent sufficient alleged facts to support them, are subject to a motion to strike." Fortini v. New England Log Homes, Inc.,4 Conn. App. 132, 134-35. 492 A.2d 545, cert. denied 197 Conn. 801,495 A.2d 280 (1985).
A. Failure to Timely File a Memorandum of Law
The defendant argues that the plaintiff's failure to file and serve his memorandum of law "at least five days before the motion is to be considered on the short calendar" requires that the motion to strike be granted, citing Practice Book 155; Hughes v. Bemer, 200 Conn. 400, 402-03, 510 A.2d 992
(1986). Practice Book 155 has been amended so that a party who files an untimely memorandum is no longer deemed to consent to the granting of the motion. Southport Manor Convalescent Center, Inc. v. Foley, 20 Conn. App. 223, 226, 565 A.2d 878
CT Page 2853 (1989), reversed on other grounds 216 Conn. 11 (1990). Thus, although a timely opposing memorandum is required, it is within the court's discretion to hear an objection to the motion where a memorandum is not timely filed. Fitzpatrick v. East Hartford B.P.O. Elks, 3 CTLR 209, 210 (February 11, 1991, Clark, J.); Olshefski v. Stenner, 2 Conn. L. Rptr. 477, 478 (September 27, 1990, Clark, J.). Accordingly, the court elects to address the merits of the motion.
B. Count One: Breach of Contract
The defendant has moved to strike the first count of the revised complaint on the ground that the plaintiff has failed to allege facts sufficient to establish either the existence of a contract or contractual liability on the part of the defendant. In his memorandum in opposition to the motion, the plaintiff consents to the granting of the motion to strike count one. Therefore, the motion to strike count one of the plaintiff's revised complaint is granted.
C. Count Two: Breach of the Implied Covenant of Good Faith
In its motion to strike, the defendant argues that count two, which sets forth the plaintiff's allegation that the defendant breached the implied covenant of good faith and fair dealing, fails to properly allege the existence of either a contract or the violation of a recognized public policy. The plaintiff argues in opposition that violation of a statute is not the sole basis upon which a breach of the covenant of good faith may be premised, and that in any event the plaintiff's allegations that the defendant violated General Statutes46a-60 and 31-290a are sufficient allegations of violation of public policy to support his "good faith" cause of action.
By alleging the existence of an employer-employee relationship, the plaintiff has properly alleged the existence of a contract. "The word `employment' indicates a contractual relationship." 30 C.J.S. 682. An employer-employee relationship contemplates an agreement between the parties: the employee performs services for the employer, who promises remuneration in return for the employee's efforts. In the absence of a specific agreed-upon term of employment, an at-will contract of employment is created; the implied covenant of good faith and fair dealing applies to such contracts. See Morris v. Hartford Courant Co., 200 Conn. 676, 677,513 A.2d 616 (1986); Magnan v. Anaconda Industries, Inc., 193 Conn. 558,568-69, 479 A.2d 781 (1984). The plaintiff's allegation that he was employed by the defendant sufficiently sets forth the existence of an implied contract to invoke the implied covenant of good faith and fair dealing. The motion to strike CT Page 2854 cannot be granted on this ground.
The defendant next claims that a violation of public policy is a prerequisite to maintaining an action for the breach of the implied covenant of good faith and fair dealing of an at-will employment contract, and that the plaintiff has alleged no such violation. In count two of the revised complaint, the plaintiff claims that the defendant's actions violated public policy in one or more of the following ways:
1) in failing to conduct activities relating to the plaintiff-employee's termination in an honest, truthful, fair and sincere manner; 2) by violating General Statutes 46a-60, which prohibits discriminatory employment practices; 3) by firing the plaintiff while the plaintiff was out of work due to an injury covered by the workers' compensation statute in violation of General Statutes 31-290a; and 4) by discriminating against the plaintiff for reasons related to the plaintiff's filing of a workers' compensation claim.
Where the contract being sued upon is an at-will contract of employment, a breach of the implied covenant of good faith and fair dealing may be established only where the reason for the discharge involves "impropriety . . . derived from some important violation of public policy." Magnan,193 Conn. at 572, citing Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,475, 427 A.2d 385 (1980). Our courts have stated that in determining whether an allegedly wrongful termination is alleged to be in violation of a relevant state statute, a court "should not ignore the statement of public policy it I represents." Sheets v. Teddy's Frosted Foods, supra, 480.
In count two, the plaintiff claims that the defendant violated the plaintiff's rights under General Statutes31-290a, which states that:
 [n]o employer who is subject to the provisions of this chapter [the Workers' Compensation Act] shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.
General Statutes 31-290a(a). A violation of this statute may be proven by showing 1) a discharge of an employee; 2) by an employer who is subject to the Workers' Compensation Act; 3) because the employee has filed a claim for workers' CT Page 2855 compensation benefits.
Paragraphs one through ten of the second count set forth allegations that the plaintiff was employed and performed the duties of his employment in a manner satisfactory to his employer, and that the plaintiff was injured on the job and elected to receive workers compensation benefits. The count further alleges that the defendant terminated and discriminated against the plaintiff "for reasons related to [the] plaintiff's filing of a workers' compensation claim." Without addressing the legal sufficiency of the remaining three alleged violations of public policy, it is apparent that these alleged facts are sufficient to state a cause of action under General Statutes31-290a. This claim, grounded as it is in the violation of a specific state statute, could constitute a violation of public policy sufficient to satisfy that element of the implied covenant of good faith and fair dealing. Therefore, the motion to strike count two of the plaintiff's revised complaint is denied.
D. Count Three: Promissory Estoppel
The defendant seeks to strike count three of the revised complaint, which sounds in promissory estoppel, because the count fails to allege a statement that is sufficiently promissory in nature to support a claim of promissory estoppel. Count three, at paragraph 13, states that "[t]he Defendant-employer's statements, conditions, representations and conduct constituted promises on the part of the employer," and that the plaintiff relied on these promises to his detriment.
A fundamental aspect of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 213. In count three of his revised complaint, the plaintiff alleges that the defendant made promises to the plaintiff, without specifying what words or conduct on the part of the defendant comprised these promises.
In failing to specify the content of the alleged promise or the means by which it was communicated by the defendant to the plaintiff, the plaintiff has not pled sufficient facts to establish the existence of a "clear and definite promise which the promisor should reasonably expect to produce action or forbearance," D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 213, but has instead stated a mere legal conclusion. The defendant's motion to strike count three of the revised complaint is granted. CT Page 2856
E. Court Four: Intentional Infliction of Emotional Distress
The defendant has moved to strike count four of the revised complaint on the ground that the count fails to fully set forth elements required to state a claim for the intentional infliction of emotional distress. In its memorandum of law, the defendant argues that the alleged conduct is not sufficiently "extreme and outrageous" to satisfy the requirements of intentional infliction of emotional distress. The challenged count, at paragraph eleven, states that:
 [w]hile totally disabled and asserting a claim for workers' compensation benefits, the defendant-employer commanded the plaintiff to return to work and further threatened the plaintiff of [sic] loss of employment should he not return to work even thought the defendant-employer had full knowledge that the plaintiff was disabled from his ability to work and could not work and was making a claim for workers' compensation benefits and the defendant-employer subsequent to the failure of the plaintiff to return to work maliciously and wrongfully terminated the plaintiff's employment when they knew that such termination would result in harm to the plaintiff. The foregoing conduct of the defendant-employer, its agents, servants and/or employees was intentional, extreme and outrageous.
Revised Complaint, Count Four, Paragraph 11.
While the question of whether a defendant's conduct is sufficiently "extreme and outrageous" is ordinarily a question of fact, it is for the court to determine, in the first instance, whether the defendant's conduct may be regarded as so extreme and outrageous as to permit recovery. Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 19, n. 1, ___ A.2d ___ (1991, Berdon, J.); Giambattista v. Hartford Courant,3 CSCR 89, 90 (November 23, 1987, Gill, J.); Chipokas v. Heritage Savings Loan Assoc., Inc., 2 CSCR 895, 896 (July 21, 1987, Kulawiz, J.). Our courts have noted that:
 [t]he extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some CT Page 2857 physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be if he did not know.
Mellaly v. Eastman Kodak Co., supra, 20, citing Restatement (Second) of Torts 546, comment (f).
The plaintiff has alleged that while he was "totally disabled," the defendant-employer commanded the plaintiff to return to work or face termination, that the defendant was aware of the plaintiff's disability, and that the defendant terminated the plaintiff's employment when the defendant knew that such termination would result in emotional harm to the plaintiff. Under the above-cited rule, these allegations could be construed as constituting extreme and outrageous conduct; the motion to strike count four of the revised complaint, therefore, is denied.
F. Count Five: Unintentional Infliction of Emotional Distress
The defendant challenges the legally sufficiency of count five of the revised complaint, which sets forth a claim of negligent infliction of emotional distress, on the ground that negligent infliction of emotional distress is barred by the exclusivity provision of the Workers' Compensation Act, General Statutes 31-275 et seq. In its memorandum, the defendant argues that the plaintiff's injuries arose out of and in the scope of employment, that workers' compensation is the sole remedy and recovery, and that recovery in common-law tort against the employer is therefore barred by General Statutes 31-284(a). The plaintiff argues in opposition that injuries arising out of an employee's termination do not come within the scope of the Workers' Compensation Act, and that his claims are therefore not barred by the exclusivity provisions of the Workers' Compensation Act,.
If an employee has a right to receive benefits under the Workers' Compensation Act, then he or she may not bring a common-law action against his or her employer for personal injuries; recovery under the Act is the sole and exclusive remedy for injuries that come within its purview. General Statutes 31-284(a); Panaro v. Electrolux, 208 Conn. 589,599, 545 A.2d 1086 (1988); Perille v. Raybestos-Manhattan-Europe, Inc., supra, 531; Wilder v. Russell Library Co., 107 Conn. 56,139 A.2d 644 (1927).
The phrase "out of and in the course of employment" means an "injury . . . originating while [the employee] has CT Page 2858 been engaged in the line of his duty in the business affairs of the employer upon the employer's premises, or while so engaged elsewhere upon the employer's business upon the direction, express or implied, of the employer." General Statutes 31-275 (emphasis supplied). The "out of and in the course of employment" test has been interpreted as a conjunctive one; the phrase "out of . . . employment" refers to the original and cause of the accident, and "in the course of employment" relates to the time, place, and circumstance of the accident. McNamara v. Town of Hamden, 176 Conn. 547, 550,398 A.2d 1161 (1979). In order to come "in the course of employment", an injury must occur (1) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it. Pagani v. BT II, Limited Partnership, 24 Conn. App. 739,745-46, 592 A.2d 397 (1991), petition for certification dismissed, 220 Conn. 902 (1991), citing McNamara v. Town of Hamden, supra, 550. "[A]n employee's activity at the time of the injury is the main determinant of whether the injury was sustained in the course of employment." 99 C.J.S. 214, p. 707.
There is a split of superior court authority on the issue of whether personal injuries alleged to have arisen out of an employee's termination come within the scope of and are therefore barred by the exclusivity provisions of the Workers' Compensation Act. However, the instant case presents a factual situation different from those previously considered, and is distinguishable from those cited below. Those cases finding that emotional injuries arising out of an employee's termination do not come within the Act's purview have reasoned that "the controlling fact in establishing exclusiveness is the relationship of the parties at the time of occurrence of the injury, that is, whether the employee-employer relationship existed at the time of the injury", Mosely v. Housing Authority, 4 CSCR 3, 4 (November 14, 1988, McDonald, J.), and that the injuries resulting from the termination of the required relationship do not fall within the purview of the Act. Id. See also Sullivan v. Griffin Health Services Corp., 2 Conn. L. Rptr. 510, 512, (September 25, 1990, Meadow, J). Those courts holding that injuries arising out of an employee's termination are barred by the Workers' Compensation Act have reasoned that "the temporal aspects of a person being in the course of employment and being fired are really inseparable and . . . that [the] claimed injur[ies] occurred in the course of the employment." Deak v. O'Neill Chevrolet and Buick, Inc., 2 CSCR 432 (March 4, 1987, O'Neill, J.). See also Fulco v. Norwich Roman Catholic Diocese,4 CTLR 64, 65 (May 3, 1991, Mihalakos, J.); Neurath v. Connecticut CT Page 2859 Institute for the Blind, 3 CTLR 462, 464 (March 8, 1991, Dunn. J.); Salzburg v. Gateway Bank, 1 Conn. L. Rptr. 550, 552 (April 26, 1990, Landau, J.); Baker v. Cigna, 4 CSCR 630 (July 11, 1989, O'Neill, J.).
Injuries arising out of an employee's termination may be regarded as arising out of and "in the course of employment," and therefore be barred by the exclusivity provisions of the Workers' Compensation Act. This is especially true where the termination occurs while the employee is on the job, in the line of duty, performing services for the employer at or near where the employee may reasonably be. See, e.g., Deak v. O'Neill Chevrolet and Buick, supra, (where employee was fired after missing work due to a work-related injury for which the employee collected workers' compensation benefits, employee had returned to work and was harassed on the job by employer during time period in which employee was fired). However, where, as here, the employee is terminated for failure to report to work, injuries resulting therefrom do not occur when the employee is "engaged in the line of his duty in the business affairs of the employer upon the employer's premises, or while so engaged elsewhere upon the employer's business upon the direction, express or implied, of the employer." General Statutes 31-275(12). Further, an employee who is fired for failing to report to work and who is injured thereby is not injured "at a place the employee may reasonably be" in performance of his or her work-related duties. See Pagani v. BT II, Limited Partnership, supra, 746. In such instances, the employee's injuries arise because the plaintiff was not at a place where the employee may reasonably be. Likewise, when the employee is terminated for failure to report to work, such injuries, as a matter of logic, do not occur "while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." Id. Again, in such instances the employee is terminated for the failure to perform acts which would come within the course of employment.
Because the plaintiff's alleged injuries may reasonably be regarded as arising outside the scope of the plaintiff's employment with the defendant, the fifth count of the revised complaint therefore will not be stricken as legally insufficient. Accordingly, the defendant's motion to strike count five is denied.
F. Count Six: Wanton and Willful Violation of General Statutes 31-290a
The defendant has moved to strike the sixth count of the revised complaint on the ground that the count fails to allege any cognizable cause of action. In his memorandum in opposition to the motion, the plaintiff consents to the CT Page 2860 granting of the motion to strike this count. Therefore, the motion to strike count six of the plaintiff's revised complaint is granted.
G. Count Seven: Violation of General Statutes 31-290a
The defendant moves to strike count seven of the revised complaint on the ground that the count fails to sufficiently allege a violation of General Statutes 31-290a. The plaintiff argues that the revised complaint alleges the existence of an employer-employee relationship, the suffering of a work-related injury by the plaintiff, the plaintiff's exercise of a statutory right and the defendant's knowledge thereof, and that the defendant dismissed the plaintiff from its employ because of the plaintiff's election to receive workers' compensation benefits.
In count seven, the plaintiff alleges that "the defendant dismissed the plaintiff from its employ" and otherwise discriminated against the plaintiff "because he filed a Workers' Compensation claim." As discussed above in section C of this memorandum, a violation of General Statutes31-290a(a) may be proven by showing 1) a discharge of an employee; 2) by an employee who is subject to the Workers' Compensation Act; 3) because the employee has filed a claim for workers' compensation benefits. By alleging that he was employed by the defendant, that he applied for and received workers' compensation benefits and that he was discharged for same, the plaintiff has alleged facts sufficient to state a cause of action under General Statutes 31-290a. Therefore, defendant's motion to strike count seven of the revised complaint is denied.
H. The Prayer for Relief
The defendant has moved to strike the plaintiff's prayer for relief on the ground that, because all seven of the plaintiff's counts are legally insufficient, the plaintiff has failed to allege "any colorable claim upon which relief can be granted." In his prayer for relief, the plaintiff requests, among other things, "just, fair, and reasonable damages." Insofar as he has set forth legally sufficient claims in counts two, four, five, and seven, the plaintiff has alleged "colorable claims upon which relief can be granted." However, the motion to strike the prayer for relief as to those counts that have been stricken is granted.
The prayer for relief also requests punitive damages pursuant to the second, sixth, and seventh counts. The second count alleges that the defendant breached the implied covenant CT Page 2861 of good faith and fair dealing of the at-will employment contract. Punitive damages are not ordinarily recoverable for breach of contract. L.F. Pace Sons, Inc. v. Travelers Indemnity Co., 9 Conn. App. 30, 48, 514 A.2d 766, (1986), certification denied, 201 Conn. 811 (1986). However, "[b]reach of contract founded on tortious conduct may allow the award of punitive damages. Such tortious conduct must be alleged in terms of wanton and malicious injury, evil motive and violence . . . . Id., 48. Because the plaintiff has not alleged "wanton and malicious injury," the plaintiff's claim for punitive damages under count two is legally insufficient.
The plaintiff has requested punitive damages under count six. In his memorandum in opposition to count six, the plaintiff consents to the granting of the motion to strike this count. The motion to strike the prayer for relief as it relates to the sixth count is granted.
The prayer for relief requests punitive damages under General Statutes 31-290a. This statute expressly permits the award of punitive damages. Therefore, the motion to strike this portion of the prayer for relief is denied.
The remainder of the prayer for relief requests the award of attorney's fees and reasonable costs. Because counts one through six have either been stricken, OF do not support an award of punitive damages, the motion to strike the prayer for relief requesting attorney's fees and costs as to these counts is granted. However, such relief is proper under the seventh count as elements of punitive damages. See Crowther v. Gerber Garment Technology, Inc., 8 Conn. App. 254, 268, 513 A.2d 144
(1986).
CONCLUSION
Based on the foregoing, the motion to strike counts one, three, and six is granted, and the motion is denied as to the remaining counts. The motion to strike the prayer for relief is granted as to those counts that have been stricken, and the motion to strike the plaintiff's prayer for relief requesting punitive damages, attorney's fees, and allowable costs is granted as to the second and sixth counts. The motion to strike the prayer for relief is denied as to the seventh count.
SCHALLER, JUDGE